IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Southwest Equipment, Inc., | ) |
|                  Plaintiff, | ) C.A. No. 6:10-1765-HMH |
| vs. | ) **OPINION AND ORDER** |
| Stoner & Company, Inc., and Hartford Casualty Insurance Company, | ) |
|                  Defendants. | ) |

This matter is before the court on Hartford Casualty Insurance Company's ("Hartford") motion to transfer venue pursuant to 28 U.S.C. § 1404(a). After review, and for the reasons explained below, the court grants Hartford's motion.

## I. FACTUAL AND PROCEDURAL HISTORY

On March 29, 2008, a fire erupted at Genesis Press, Inc./Genesis Publications, LLC ("Genesis") in Greenville, South Carolina. (Pl. Mem. Opp'n Mot. Transfer Venue 1.) The fire damaged two Mitsubishi printing presses that were insured by Hartford, an Indiana corporation with its principal place of business in Connecticut. (Id.; Def. Mem. Supp. Mot. Transfer Venue 4.) The insurance policy listed Mitsubishi's in-house financing department ("MAC Funding") as the loss payee. (Pl. Mem. Opp'n Mot. Transfer Venue 1.) Hartford subsequently took possession of the printing presses and hired Stoner & Company, Inc. ("Stoner") to solicit bids for purchase of the printing presses. (Def. Mem. Supp. Mot. Transfer Venue 2.) Stoner is a Massachusetts corporation that maintains its principal place of business in Sudbury, Massachusetts. (Id. at 4.)

1

On April 17, 2008, Southwest submitted a $212,000.00 bid for the printing presses. (Id. at 2.) Stoner conditionally accepted Southwest's bid the same day, and Southwest sent Stoner a deposit in the amount of $50,000.00. (Pl. Mem. Opp'n Mot. Transfer Venue 2.) Southwest subsequently contracted with Pan Pac, LLC ("Pan Pac") to sell the printing presses under clear title for $252,000.00. (Id.) Southwest paid Stoner the remaining balance for the printing presses on May 2, 2008. (Id.) Southwest alleges that Stoner thereafter refused to honor the contract and returned Southwest the $212,000.00 contract price. (Id.) Southwest later discovered that MAC Funding had a lien on the printing presses and never transferred title to Hartford or Stoner. (Id. at 2-3.) Despite numerous attempts to purchase the printing presses, Southwest learned on May 20, 2010 that the printing presses had been sold to a third party. (Pl. Mem. Opp'n Mot. Transfer Venue 3.)

On July 7, 2010, Southwest commenced this action against Hartford, asserting claims for breach of contract, negligent misrepresentation, violation of the South Carolina Unfair Trade Practices Act, and breach of warranty of title. (Compl., generally.) Hartford filed the instant motion on August 25, 2010. The parties have fully briefed the issues, and this matter is ripe for consideration.

## II. Discussion of the Law

Hartford moves to transfer this case to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Whether a case should be transferred to an alternative venue rests within the sound discretion of the district court. In re Ralston Purina Co.,

726 F.2d 1002, 1005 (4th Cir. 1984). A motion to transfer venue requires the court to engage in an "individualized case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). When undertaking this individualized analysis, courts weigh the following factors:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Landers v. Dawson Constr. Plant, Ltd., Nos. 98-2709, 98-2763, 1999 WL 991419, at *2 (4th Cir. Nov. 2, 1999) (unpublished).[1] Generally, a plaintiff's choice of forum will not be disturbed lightly; a defendant has a heavy burden when it moves to transfer a venue properly selected by the plaintiff. Phillips v. S. Gumpert Co., 627 F. Supp. 725, 726-27 (W.D.N.C. 1986). This burden, however, is relaxed when the plaintiff does not reside in the forum state, Realson v. Univ. Med. Pharm. Corp., Civil Action No. 4:09-cv-3277-TLW-TER, 2010 WL 1838911, at *3 (D.S.C. May 6, 2010), or when the "plaintiff sues in a forum which has no discernible connection with the controversy." DeLay & Daniels, Inc. v. Allen M. Campbell Co., 71 F.R.D. 368, 371 (D.S.C. 1976). Moreover, transfer of venue is inappropriate if the transfer merely shifts the burdens of litigation from one party to the other. See id. at 372.

Hartford contends, and Southwest does not dispute, that the District of Massachusetts is a feasible venue for this civil action. (Def. Mem. Supp. Mot. Transfer Venue 4-5.) Therefore, the court limits its § 1404(a) inquiry to the issues of convenience and fairness.

---

[1] The parties agree that the fifth factor is inapplicable to the instant motion.

### A. Access to Sources of Proof

Hartford argues that the central sources of proof in this case are located in Massachusetts because that is Stoner's principal place of business and consequently where it retains records pertinent to this action. (Id. at 7.) Further, Hartford maintains that no significant evidence is in South Carolina because even the printing presses, which it contends are immaterial to the resolution of this breach of contract action, are no longer located in South Carolina. (Id. at 8.) Southwest submits that Genesis, the original owner of the printing presses, is located in South Carolina, and records concerning the purchase and condition of the printing presses are in South Carolina. (Pl. Mem. Opp'n Mot. Transfer Venue 5.)

Southwest fails to show how the original owner of the printing presses bears any relevance to this case or how transfer would thwart access to proof. Significantly, Southwest has not presented the court with any evidence that relevant, material sources of proof exist in South Carolina that would favor a South Carolina venue. Conversely, adjudication of this action in Massachusetts would ease access to proof because it would position the litigation in closer proximity to Stoner and Hartford's principal places of business and the representatives and records therein. Therefore, this factor weighs in favor of transfer.

### B. Convenience of Parties and Witnesses

Convenience of witnesses is a significant factor when determining whether transfer is warranted under § 1404(a). Roby v. Gen. Tire & Rubber Co., 500 F. Supp. 480, 486 (D. Md. 1980) (stating that it is the "most important" factor to consider). When analyzing convenience of witnesses, courts frequently distinguish party witnesses from non-party witnesses. Finkel v. Suburu of. Am., Inc., No. 3:06CV292, 2006 WL 2786811, at *4 (E.D. Va. Sept. 26, 2006).

"[P]arty witnesses are parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." Id. Therefore, courts typically afford greater weight to convenience of non-party witnesses than party witnesses.

Southwest identifies the following witnesses it intends to utilize during the course of litigation:

   a. Florida:  Angela Arcona, owner of Southwest

   b. South Carolina:  Bruce Kudeviz, Larry Kudeviz, Michael Kudeviz, all of whom were principals of Genesis and executed the lease for the printing presses with MAC Funding; Chandler Griffith, commercial insurance agent with knowledge of the procurement of the Genesis Policy and endorsement of naming MAC Funding as a loss payee

   c. Georgia:  Vicki Babcock, employee of Stoner

   d. North Carolina:  David Holland, main adjuster for Hartford

   e. Virginia:  Chad Foster, employee of Stoner

   f. New Jersey:  Pan Pac, purchased printing presses; Gary Thompson, attorney for Pan Pac

   g. Illinois:  Joseph Parisis, attorney who communicated MAC Funding's ownership of the printing presses; Hidekazu Kotegawa, president of MAC Funding

(Pl. Mem. Opp'n Mot. Transfer Venue 6-7.) Hartford submits that Boston's close proximity to Hartford and Stoner's principal places of business and its status as a major travel hub make it a more convenient venue for the parties and witnesses. (Def. Mem. Supp. Mot. Transfer Venue 7.) Southwest, however, maintains that venue in South Carolina would be more convenient for its witnesses residing in Florida, South Carolina, Georgia, North Carolina, and Virginia because it would allow travel by car. (Pl. Mem. Opp'n Mot. Transfer Venue 7.)

5

The court finds that this factor weighs in favor of transfer. Of Southwest's eight non-party witnesses, four live in South Carolina, two live in New Jersey, and two live in Illinois. (Id. at 6-7.) Hartford argues that Genesis's principals, located in South Carolina, are immaterial to the litigation and that Boston would serve as a more convenient forum for Southwest's non-party witnesses residing in Illinois and New Jersey. (Def. Reply 3-4.) The court agrees. Testimony from three Genesis principals would likely be cumulative and insignificant in resolving Southwest's claims, and therefore, the court accords less weight to any inconvenience transfer may cause those witnesses. See Mullins v. Equifax Info. Servs., LLC, No. Civ.A. 3:05CV888, 2006 WL 1214024, at *7 (E.D. Va. Apr. 28, 2006) (noting that courts should accord greater weight "to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue"). Most of Southwest's other witnesses are employees of Hartford and Stoner, and as such, the court presumes they are willing to testify in either forum. Finkel, 2006 WL 2786811, at *4. Further, the court finds that Boston's status as a major travel hub renders it a more convenient venue for the party witnesses and Southwest's non-party witnesses residing in Illinois and New Jersey. Given that none of the parties are residents of South Carolina, the witnesses are located throughout the east coast, and South Carolina has no discernible connection with Southwest's claims, the court concludes that Hartford has carried its burden in showing this factor favors transfer.

### C. Cost of Obtaining Attendance of Witnesses

Hartford alleges that venue in South Carolina would result in higher travel expenses and "significant business costs caused by the disruption of party's [sic] day-to-day activities due to the absence of employees." (Def. Mem. Supp. Mot. Transfer Venue 8.) Southwest maintains

that costs would be less expensive if the case remained in South Carolina because witnesses from Georgia, South Carolina, North Carolina, and Virginia could drive. (Pl. Mem. Opp'n Mot. Transfer 7.)

The parties and witnesses involved in this action reside throughout the Eastern United States. A substantial number of witnesses will be required to fly to the forum regardless of where the case is litigated. Therefore, the court finds that this factor does not weigh in favor of either venue.

### D. Availability of Compulsory Process

Massachusetts, Hartford argues, would be a favorable venue if it is necessary to compel the attendance of witnesses. (Def. Mem. Supp. Mot. Transfer Venue 8.) Citing Rule 45 of the Federal Rules of Civil Procedure, Hartford reasons that more witnesses would fall within the scope of the court's subpoena power if venue were in Boston. (Id.) Southwest contends that the court would have subpoena authority over its four South Carolina witnesses if venue remained in South Carolina. (Pl. Mem. Opp'n Mot. Transfer Venue 8.)

As noted above, the testimony of the Genesis principals is likely immaterial to the resolution of this matter. However, Hartford fails to identify with specificity any witnesses that would be subject to the court's subpoena power if venue were transferred to the District of Massachusetts. Therefore, this factor is neutral.

### E. Interest of Having Local Controversies Decided at Home

Southwest contends that South Carolina law applies to this action, and therefore, adjudication of Southwest's claims in South Carolina is favorable. Id. South Carolina, Southwest maintains, has an interest in adjudicating this case because the printing presses and

their original owners were located in South Carolina. (Id.) Hartford disputes that South Carolina law applies but argues that even if South Carolina law applies, the elements for a breach of contract action in Massachusetts and South Carolina are identical, and a court sitting in the District of Massachusetts would be unimpeded in applying South Carolina common law. (Def. Mem. Supp. Mot. Transfer Venue 9-10.) Further, Hartford argues that Massachusetts has a stronger interest in the outcome of this case because Stoner is a resident of Massachusetts and because some of the alleged conduct that gave rise to Southwest's claim took place in Massachusetts. (Id. at 10.)

The court finds that this factor weighs in favor of transfer. Given that the contract was negotiated and executed outside of South Carolina and that the alleged acts or omissions underlying Southwest's claims occurred outside of South Carolina, any interest of South Carolina in litigating this case within its borders is trivial. Even if adjudication of this straightforward action requires application of South Carolina law, the court is convinced that a federal court in the District of Massachusetts would possess the aptitude to apply the law of South Carolina to Southwest's claims. See Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1169 (10th Cir. 2010) (noting that "federal judges are qualified to apply state law" especially "when the case involves relatively simple legal issues" (internal quotation marks omitted)).

### F. Interest of Justice

Analysis of the "interest of justice" factor requires a holistic approach, focusing on issues such as preserving judicial economy and conserving judicial resources. Palmetto Bank v. Bankfirst, No. 6:08-cv-4072-GRA, 2009 WL 212417, at *2 (D.S.C. Jan. 28, 2009). Both

Southwest and Hartford cite statistics comparing the dockets and average time to litigate cases in the District of Massachusetts and the District of South Carolina. Southwest argues that the interest of justice factor favors venue in the District of South Carolina because the median time from filing a case to trial in the District of South Carolina is almost half of the median time for actions in the District of Massachusetts. (Pl. Mem. Opp'n Mot. Transfer Venue 9.) Hartford, however, contends that while the District of South Carolina more expeditiously progresses cases from filing to trial than the District of Massachusetts, the median time from filing to disposition of a case is almost identical among the two districts. (Def. Reply 6.) The court finds that the more relevant statistic is the median time between filing of an action to disposition of the case. Based on the foregoing, the court finds that this factor is neutral.

After weighing the applicable § 1404(a) factors, the court finds that Hartford has carried its burden in showing that the convenience of the parties and witnesses and the interest of justice warrant transfer to the District of Massachusetts.

It is therefore

**ORDERED** that Hartford's motion to transfer venue, docket number 14, is granted. It is further

**ORDERED** that Stoner's motion to dismiss, docket number 18, is denied as moot.

**IT IS SO ORDERED.**

                                             s/Henry M. Herlong, Jr.
                                             Senior United States District Judge

Greenville, South Carolina
November 1, 2010